IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LLOYD A. CASADA,** | Case No. 1:17 CV 451 |
| Petitioner, | Chief Judge Patricia A. Gaughan |
| v. | Magistrate Judge James R. Knepp, II |
| **NEIL TURNER,** | |
| Respondent. | REPORT AND RECOMMENDATION |

### INTRODUCTION

*Pro se* Petitioner Lloyd A. Casada ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Neil Turner, Warden of the North Central Correctional Complex ("Respondent"), filed an Answer / Return of Writ (Doc. 6), and Petitioner filed a Reply / Traverse (Doc. 12).[1] The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated March 8, 2017). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. §

---

1. Parties and courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Eighth District Court of Appeals made the following factual findings on direct appeal:

> {¶ 11} The grand jury indicted Casada on four counts, with two counts of rape, and one count each of kidnapping and gross sexual imposition (Cuyahoga C.P. No. CR–15–593718–A). These charges arose after Casada and a coworker went drinking during one afternoon when they were no longer needed at work. They drank at multiple locations throughout the day. Casada's coworker tried to take Casada home, but he jumped out of her car. The coworker took Casada back to her home to call him a cab. While there, Casada engaged in unwanted sexual acts against her, including cunnilingus and digital penetration. Finally, the coworker was able to get her roommate to help her kick Casada out of her home. She then called the police.

(Ex. 13, Doc. 6-1, at 60-74); *State v. Casada*, 2016 WL 1594022 (Ohio Ct. App).

## PROCEDURAL HISTORY

<u>State Court Conviction</u>

In January 2014, Petitioner pleaded guilty to attempted domestic violence. (Ex. 1, Doc. 6-1, at 4) (Case No. CR-13-580252-A). He was sentenced to two years of community control with a list of conditions. (Ex. 2, Doc. 6-1, at 5). Violation of the conditions subjected Petitioner to a possible 12-month prison term. *Id.*

In October 2014, Petitioner was charged with rape and kidnapping in Cleveland Municipal Court. *Casada*, 2016 WL 1594022, at ¶ 10. Petitioner told a detective that he would turn himself in, but he did not. *Id.* at ¶ 14. In December 2014, the trial judge in Petitioner's original attempted domestic violence case issued a journal entry requesting the sheriff's department prioritize Petitioner's apprehension "because [he] had been charged with a first-degree felony while still under supervision to this judge for the attempted domestic violence conviction." *Id. at* ¶ 10. Petitioner was ultimately arrested in February 2015. *Id.*

2

In March 2015, the Cuyahoga County Grand Jury issued an indictment charging Petitioner with two counts of rape in violation of Ohio Rev. Code § 2907.02(A)(2) (Counts 1-2); gross sexual imposition in violation of Ohio Rev. Code § 2907.05(A)(1) (Count 3); and kidnapping in violation of § 2905.01(A)(4), with a sexual motivation specification. (Ex. 4, Doc. 6-1, at 8-9) (Case No. CR-15-593718-A). Petitioner pleaded not guilty. (Ex. 5, Doc. 6-1, at 10).

In July 2015, the State amended Count 1 to sexual battery in violation of Ohio Rev. Code § 2907.03(A)(3) and Count 4 to abduction in violation of Ohio Rev. Code § 2905.02(B). (Ex. 6, Doc. 6-1, at 11). The State also deleted the sexual motivation specification from Count 4, and *nolled* Count 2. *Id.* Petitioner pleaded guilty to Counts 1, 3, and 4. *Id.* The parties agreed that Counts 1 and 4 were allied offenses, but that Counts 1 and 3 were separate, non-allied offenses. *Id.* The trial court sentenced Petitioner to 60 months imprisonment on Count 1 and 18 months imprisonment on Count 3, to be served consecutively for an aggregate sentence of 78 months. *Id.* The trial judge in this case was the same judge as in Petitioner's prior attempted domestic violence case.

Following this conviction, the trial court found Petitioner had violated his community control sanctions in Case No. CR-13-580252-A. (Ex. 9, Doc. 6-1, at 17). The court terminated his community control sanctions and sentenced Petitioner to 12 months in prison, to be served consecutively to his sentence in Case No. 15-CR-593718-A. *Id.*

Direct Appeal

Through counsel, Petitioner filed a timely appeal with the Ohio Eighth District Court of Appeals. (Ex. 10, Doc. 6-1, at 19). In his brief, he raised two assignments of error:

1. The trial court judge's personal involvement in the apprehension of the defendant and his statements at sentencing illustrate a judicial bias and/or an appearance of impropriety that violated Casada's due process rights and that require a new sentencing hearing.

3

    2. The trial court imposed a sentence contrary to law and violated Mr. Casada's right to due process when it ordered consecutive sentences without making the requisite statutory findings.

(Ex. 11, Doc. 6-1, at 28). The State filed a brief in response (Ex. 12, Doc. 6-1, at 43-59), and on April 21, 2016, the appellate court affirmed the judgment of the trial court (Ex. 13, Doc. 6-1, at 60-74); *Casada*, 2016 WL 1594022.

On August 4, 2016, Petitioner, *pro se*, filed a notice of appeal and motion for leave to file a delayed appeal with the Ohio Supreme Court. (Exs. 14-15, Doc. 6-1, at 75-81). In his motion, he asserted that he had not received notice of the appellate court's decision until June 13, 2016, and further had not received the documents form his direct appeal from counsel until July 5, 2016. *Id.* at 78.[2] On October 5, 2016, the Ohio Supreme Court denied Petitioner's motion and dismissed the case. (Ex. 16, Doc. 6-1, at 96).

Application to Reopen

On August 16, 2016, Petitioner, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 17, Doc. 6-1, at 97-104). He asserted:

    1. The Appellant was deprived of his right to effective assistance of appellate counsel in contravention to the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution

    2. The Appellant's United States Fifth Amendment right against double jeopardy was violated when the trial court failed to hold a hearing to determine allied offenses in this case.

*Id.* at 98-99. The State filed an opposition, asserting Petitioner's 26(B) application was untimely and that he had not shown ineffective assistance. (Ex. 18, Doc. 6-1, at 105-10). Petitioner replied,

---

2. Petitioner attached a letter from appellate counsel dated May 2, 2016, but asserted in an affidavit he did not receive the letter until June 13, 2016. *See* Ex. 15, Doc. 6-1, at 80-81. Petitioner's motion also makes reference to an "enclosed . . . copy of the envelope showing that this mail was not received in the institution mail room until June 13, 2016", *id.*, at 78 but this is not part of the record before this Court.

4

asserting the same reasons for delay he had asserted to the Ohio Supreme Court in his motion for delayed appeal. (Ex. 19, Doc. 6-1, at 111-14). On November 16, 2016, the appellate court denied Petitioner's 26(B) application, finding it untimely filed, with no good cause shown. (Ex. 20, Doc. 6-1, at 115); *State v. Casada*, 2016 WL 6879755 (Ohio Ct. App.). Petitioner did not appeal this decision to the Ohio Supreme Court.

Affidavit of Bias or Prejudice

On October 24, 2016, Petitioner filed an Affidavit of Bias or Prejudice alleging trial judge bias based on remarks made at sentencing. (Ex. 21, Doc. 6-1, at 122-24).

### FEDERAL HABEAS CORPUS

In his Petition before this Court, Petitioner raises two grounds for relief:

**Ground One:** The trial court committed judicial bias against Casada, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

*Supporting Facts*: The trial court was involved in the apprehension of Casada and made . . . biased comments at sentenc[ing].

**Ground Two:** The trial court improperly imposed consecutive sentences, in violation [of the] Due Process Clause of the Fourteenth Amendment of the United States Constitution.

*Supporting Facts*: The trial court failed to comply with the required statutory findings when it imposed consecutive sentences.

(Doc. 1, at 2).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the

adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Respondent contends both of Petitioner's grounds for relief are procedurally defaulted, or alternatively, meritless and non-cognizable. Petitioner responds that he can show cause and

6

prejudice to overcome the default, and his grounds have merit. For the reasons discussed below, the undersigned recommends the Petition be denied.

Exhaustion & Procedural Default

Respondent contends both of Petitioner's grounds for relief are procedurally defaulted and thus may not be considered by this Court. Petitioner responds that he can show cause and prejudice to excuse the default because he did not receive timely notice of the appellate decision. For the reasons discussed below, the undersigned recommends the court find Petitioner's grounds procedurally defaulted.

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

A procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan,* 526 U.S. at 842; *Anderson v. Harless,* 459 U.S. 4 (1982). In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims, on the record, to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *See O'Sullivan,* 526 U.S. at 845; *see also Caver v. Straub,* 349 F.3d. 340, 346 (6th Cir. 2003) (claims must be raised at each level of state review). This is to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts

7

before obtaining habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

If the State argues a petitioner has procedurally defaulted his claims, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).

Although Petitioner raised his grounds to the Ohio appellate court (Ex. 11, Doc. 6-1, at 28), he then procedurally defaulted them by failing to file a timely appeal to the Ohio Supreme Court. The state appellate court denied Petitioner's appeal and affirmed the trial court's judgment on April 21, 2016. (Ex. 13, Doc. 6-1, at 60-74); *Casada*, 2016 WL 1594022. Pursuant to the Ohio Supreme Court's rules, he had 45 days (until June 6, 2016) to seek review of that decision. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). Petitioner did not do so, and the Ohio Supreme Court denied his motion for leave to file a delayed appeal under Ohio Supreme Court Practice Rule 7.01(A)(4)(a). (Ex. 16,

8

Doc. 6-1, at 96). This dismissal constitutes an adequate and independent state ground on which the state can rely to foreclose federal review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Because Petitioner failed to present his claims on direct appeal to each level of the Ohio courts, *see O'Sullivan* 526 U.S. at 847, and any attempt to raise such a claim now would be barred by *res judicata*, *see State v. Cole*, 2 Ohio St. 3d 112, 114 (1982), Petitioner has procedurally defaulted both of his claims. As such, this Court may only consider the merits of Petitioner's grounds for relief if he can show cause and prejudice to excuse the default.[3]

*Cause & Prejudice*

Petitioner provides the same cause that he did before the Ohio courts—he alleges he was not informed of the appellate court's decision until after the 45-day time frame had expired. Specifically, he contends he did not receive notice of the state appellate decision until June 13, 2016.

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla,* 370 F.3d at 498 (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice,

---

3. A petitioner may also overcome a procedural default by demonstrating that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[ ] a constitutional claim with a 'colorable showing of factual innocence.' " *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell,* 428 U.S. 465, 492-93 (1976)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). Petitioner has presented no such evidence or argument.

but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (emphasis in original).

Although there is no constitutional right to counsel in a discretionary appeal to the Ohio Supreme Court, *see Evitts v. Lucey*, 469 U.S. 387, 394 (1985), the Sixth Circuit has held the right to effective assistance of appellate counsel extends to the duty of informing the client of the outcome of the appeal, *Smith v. Ohio Dep't of Rehab. & Corr*, 463 F.3d 426, 433 (6th Cir. 2006). Appellate counsel's failure to inform the petitioner of the appellate court's decision within the appropriate timeframe can constitute ineffective assistance sufficient to constitute cause and prejudice to excuse a procedural default. *Id.* at 434. Prejudice is presumed in a situation where a defendant's right to appeal is foreclosed because he did not receive timely notice from counsel of the appellate court's decision. *Id.*

However, the Sixth Circuit applies a "rebuttable presumption that if the period of time between when the defendant learned of the [appellate court] decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal . . ., the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for [appellate] counsel's failure to notify the defendant of the decision." *Smith,* 463 F.3d at 435 (emphasis in original) (citing *Roe v. Flores-Ortega*, 528 U.S. 482, 485 (2000)); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565-66 (6th Cir. 2012) (relying on *Smith* in rejecting the habeas petitioner's argument that "cause" was established for his delay in filing a delayed appeal motion with the Ohio Supreme Court because, although the petitioner may not have known of the appellate court's decision until a year after the decision was rendered and at that point immediately filed a Rule 26(B) motion to reopen the appeal, he did not file his motion for delayed

appeal until 90 days later, well past the 45–day appeal period allotted under the Ohio Supreme Court's Rules of Practice). District courts applying *Smith* have reached similar conclusions. *See, e.g., Lung v. Chillicothe Corr. Inst.*, 2015 WL 4778832, at *5 (S.D. Ohio) (finding three month delay between learning of appellate court decision and filing of motion for delayed appeal foreclosed the argument that counsel's delay could serve as cause and prejudice to overcome default), *report and recommendation adopted by*, 2015 WL 7076481; *Isreal v. Warden, Warren Corr. Inst.*, 2015 WL 357060, at *9 (S.D. Ohio) (ten month delay between learning of appellate court's decision and filing of motion insufficient), *report and recommendation adopted by* 2015 WL 763968. *Gau v. Kelly*, 2011 WL 400141, at *6-7 (N.D. Ohio) (filing of motion for delayed appeal 56 days after learning of appellate court decision insufficient).

Preliminarily, the undersigned notes it is not clear that the failure of notice here is attributable to counsel. This is so because the letter from counsel is dated May 2, 2016; however, Petitioner asserted in an affidavit he did not receive the letter until June 13, 2016. *See* Ex. 15, Doc. 6-1, at 80-81. Regardless, after receiving information about the appellate decision on June 13, 2016, Petitioner did not file a motion for delayed appeal until August 4, 2016—53 days later. *See* Exs. 14-15, Doc. 6-1, at 75-81. This is greater than the 45-day allotted time period for filing a discretionary appeal to the Ohio Supreme Court. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(i). Thus, the rebuttable presumption of no prejudice from *Smith* applies:

> that if the period of time between when the defendant learned of the decision and when he or she attempted to appeal the decision is *greater* than the period allotted by state law for the timely filing of an appeal-here, forty-five days-the defendant fails to demonstrate that he or she "would have timely appealed" the decision but for the counsel's deficient failure to notify the defendant of the decision.

463 F.3d at 435. Thus, "[i]n the absence of other circumstances hindering the defendant's ability to attempt to appeal the decision within this time frame, allowing a greater amount of time would

11

generally bestow a windfall upon the defendant whose counsel promptly failed to notify the defendant of a decision." *Id.* The only other circumstance alleged by Petitioner is that he "did not receive other documents and his transcripts [from appellate counsel] until July 5, 2016." (Doc. 12, at 8). Specifically, in his motion for delayed appeal Petitioner asserted that, upon receipt of the result of his appeal on June 13, 2016, he "made another request that counsel turn over copies of the documents and transcripts filed in his direct appeal" and he "did not receive those documents until July 5, 2016." (Ex. 15, Doc. 6-1, at 78). The undersigned finds this cannot serve as cause. Even crediting all of Petitioner's assertions (and applying *Smith*), 45 days after Petitioner states he learned the appellate court's decision was July 28, 2016. Thus, Petitioner received the documents and transcripts well before that date and still did not file within 45 days of the date he learned of the appellate decision. Therefore, this is not an "other circumstance[] hindering the defendant's ability to attempt to appeal the decision within this time frame" as set forth in *Smith*. 463 F.3d at 435. Moreover, the Sixth Circuit has held that circumstances such as a petitioner's *pro se* status, ignorance of the law and procedural requirements, and limited access to the law library do not rise to the level of cause to excuse a procedural default. *Bonilla*, 370 F.3d at 498. Analogously, therefore, a Petitioner's lack of access to his appellate briefs and trial transcripts similarly cannot serve as cause. As such, the undersigned recommends the Court find Petitioner's grounds procedurally defaulted, and that he has not shown cause and prejudice to overcome that default.

Further, even if these facts were sufficient to establish "cause", the undersigned finds alternatively below that Petitioner's claims would not succeed as they are either non-cognizable, or meritless.

Ground One: Judicial Bias

In Ground One, Petitioner contends the trial judge was biased against him in violation of the Due Process Clause of the Fourteenth Amendment. (Doc 1, at 2). Respondent, in his alternative merits analysis, argues this claim fails on the merits.[4] The undersigned agrees with Respondent that Petitioner has not shown a due process violation.

Under the Fourteenth Amendment, a defendant must be afforded a fair trial before a judge with no actual bias against the defendant or interest in the outcome of the particular case. *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). "[B]ias in this context means 'a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it rests upon knowledge that the subject ought not possess . . ., or because it is excessive in degree . . . .' " *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006) (ellipses in original) (quoting *Liteky v. United States*, 510 U.S. 540, 550 (1994)). Except in extreme cases, a claim of judicial bias is limited to situations involving information from an extrajudicial source. *See Liteky*, 510 U.S. at 554–55; *see also Alley*, 307 F.3d at 386 (applying *Liteky*'s definition of bias or prejudice to a due process claim against a state court judge).

Petitioner contends the trial judge was constitutionally biased against him and cites the trial judge's remarks during sentencing. (Doc. 12, at 12) (citing Tr. 48-49, 60, Doc. 6-2, at 57-58, 69). Specifically, he points to the following comments:

> THE COURT: Thank you very much. You know, I distinctly remember this, because I was at the Court holiday party that evening, and I made a personal phone call to the High-Value Apprehension unit to make sure Mr. Casada was b[r]ought into custody. That was December 12th.

---

4. Specifically, Respondent contends this ground "is without merit and the reasonable state court determination on this issue is entitled to AEDPA deference." (Doc. 6, at 14). There was, however, no state court determination on the merits of this issue, because the appellate court held it lacked jurisdiction to consider the claim. *See Casada*, 2016 WL 1594022, at ¶ 24.

> \* \* \*
> I put you on the street after the victim asked you to get counseling. She wanted you to get help. I put you on the street, and this is how you repay my attempt to get you healthy.
> And once again, I mentioned earlier, Mr. Casada, that I took time out of my schedule, in the middle of the night, to call the Warrant Unit to have you picked up. They're very good at what they do. Very good at what they do. And when I call, they listen.

(Tr. 48-49, 60, Doc. 6-2, at 57-58, 69).

The Ohio Appellate court held it lacked jurisdiction to consider this claim on direct appeal because the exclusive remedy for judicial bias claims is through a challenge under Ohio Revised Code § 2701.03 to the Ohio Supreme Court. *Casada*, 2016 WL 1594022, at ¶¶ 23-28. Respondent does not assert this is a separate default, but rather contends Petitioner has presented no evidence of bias. The undersigned agrees. Immediately prior to the first comment to which Petitioner objects, the State presented evidence that it had difficulty apprehending Petitioner after the October 2014 charges, and "[t]he capias was issued on December 12, 2014. And he was apprehended on February 27, 2015, almost a full year from when he was granted community control sanctions." (Tr. 48, Doc. 6-2, at 57). The trial judge then stated he remembered making a phone call that day. Petitioner has not explained how it was contrary to any clearly established federal law for a judge to participate in the apprehension of a fugitive. Although Petitioner cites law for the proposition that "due process is violated . . . where the judge acts as 'part of the accusatory process'", *In re Murchison*, 349 U.S. 133, 138 (1955), this was not the case here. Here, Petitioner had been charged with rape and kidnapping in Cleveland Municipal Court in October 2014. *Casada*, 2016 WL 1594022, at ¶ 10. And the trial judge "issued a journal entry [on December 12, 2014] requesting that the sheriff's department make 'apprehension of [Petitioner] a top priority' because [Petitioner] had been charged with a first-degree felony while still under supervision to this judge for the

14

attempted domestic violence conviction." *Id.* Thus, the undersigned finds Petitioner has not shown the judge exhibited any bias. His first comments simply reflect that he remembered Petitioner's case, and had taken steps, within the bounds of his authority, to ensure Petitioner was arrested.

Petitioner secondly argues that the trial judge "viewed Petitioner's violation of his probation as a personal affront" and "paint[ed] . . . himself as having bee[n] victimized by Petitioner's new offense and suggests that his personal antipathy toward Petitioner affected the neutrality of the sentencing judgment." (Doc. 12, at 12). But as Petitioner himself recognizes, "it is perfectly appropriate for a judge to impose a more severe sentence upon an offender who commits a new crime while under supervision[.]" *Id.*

As the Sixth Circuit recently explained in denying a certificate of appealability, a judge's "express[ion of] extreme disapproval of [the petitioner's] instant offenses, related behavior, . . . criminal history, [and] characterize[ation] of [the petitioner] as a 'predator'" is "insufficient to demonstrate unconstitutional bias." *Calvey v. Burt*, 2018 WL 2015779, at *3 (6th Cir.). The court explained: "although the trial judge clearly had a negative opinion of [the petitioner], [the petitioner] failed to show that it was due to information from an extrajudicial source or that it was 'so extreme as to display clear inability to render fair judgment.'" *Id.* (quoting *Liteky*, 510 U.S. at 551).

In sum, none of the comments pointed to by Petitioner evidence judicial bias affecting Petitioner's due process right to a fair trial.

Ground Two: Consecutive Sentences

In Ground Two, Petitioner contends that the trial court's imposition of consecutive sentences, without making the required statutory findings under Ohio law, violated his due process rights under the Fourteenth Amendment. Respondent contends this ground is 1) non-cognizable,

and 2) meritless. For the reasons discussed below, the undersigned recommends the court find this claim non-cognizable.

Preliminarily, this claim—failure to make the required statutory findings—is the only claim Petitioner raised on direct appeal regarding his consecutive sentences. *See* Ex. 11, Doc. 6-1, at 38-41. Although Petitioner used the words "due process" in the heading of his assignment of error, he relied on no federal case law in his argument. *See id.* The same is true for the Petition. *See* Doc. 1 at 2.[5] This is insufficient to fairly present a federal claim to a state court. *See, e.g., Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) ("[G]eneral allegations of the denial of right to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.").

Further, the undersigned agrees with Respondent that a challenges to the trial court's application of state sentencing laws is not generally cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) (federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law"). "A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). An assertion that the state trial court improperly calculated a petitioner's sentence under state law is not cognizable in federal habeas proceedings. *Coleman v. Curtain*, 425 F. App'x 483, 484-85 (6th Cir. 2011). Only

---

5. In his Traverse, Petitioner presents arguments regarding double jeopardy. *See* Doc. 12, at 16-19. But the factual and legal basis for this argument was not presented to the Ohio courts, and thus cannot be considered here. *See Whitings*, 395 F.3d at 612; *Koontz*, 731 F.2d at 368.

where an error results in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Petitioner has made no such showing here. Thus, the undersigned recommends the court find Petitioner's assertion that the trial court "failed to comply with the required statutory findings when it imposed consecutive sentences" (Doc. 1, at 2) is not a cognizable claim in these proceedings.

The state appellate court found as a matter of fact, that "the trial court engaged in the correct analysis and that the record supports the findings." 2016 WL 1594022, at ¶ 34. Petitioner has not shown by clear and convincing evidence that this is incorrect. *See* 28 U.S.C. § 2524(e)(1). Even were the claim cognizable, Petitioner has not shown the state court's determination on this issue—finding no error under Ohio sentencing law, *Casada*, 2016 WL 1594022, at ¶ 29-34—was contrary to, or an unreasonable application of, any clearly established federal law.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be DENIED. Ground One is procedurally defaulted and meritless, and Ground Two is procedurally defaulted and non-cognizable.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).